BERENS, et ux. v. WORTMAN

[No. 192, September Term, 1967.]

*Decided June 28, 1968.*

344

The cause was argued before HORNEY, MARBURY, BARNES, McWILLIAMS, and SINGLEY, JJ.

*John C. Keating* for appellants.

*Stanley Klavan,* with whom was *Paul H. Mannes* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Montgomery County (Shure, J.) declaring that Mary Collins Jones Wortman, plaintiff below and appellee here, is the fee simple owner of certain real estate in Montgomery County, that Frederick W. Berens, Jr. and Lavonne O. Berens, his wife, defendants below and appellants here, hold record title to that real estate as constructive trustees for Mrs. Wortman, subject to a mortgage on the property made by the appellants to the Citizens Building & Loan Association of Montgomery County, Inc. (Citizens), that a trustee be appointed to convey the property to the appellee and that the appellee deliver to the appellants a promissory note secured by a deed of trust immediatly junior in priority to the above mentioned mortgage to secure the balance of a commission due the appellants. We will reverse the order of the lower court.

The testimony in the lower court was lengthy but the Chancellor did not make extensive findings of fact. We will supplement the Chancellor's findings with testimony most favorable to

the appellee, although the appellants vigorously deny much of this testimony.

In January, 1964, Mary Collins Jones Wortman (then Mary Collins Jones) lived in Montgomery County with her five minor children. She was emotionally upset, having been deserted by her husband shortly after her youngest child was born, and was experiencing personal and financial difficulties. She was learning to walk again after a serious accident. As a result of default under a first deed of trust on Mrs. Wortman's home the house was advertised for sale.[1] Following the first notice of sale many real estate brokers and salesmen began to call Mrs. Wortman and appear personally at her residence, all of whom she turned away.

In late January of 1964, Mr. Berens, defendant-appellant, appeared at Mrs. Wortman's home and introduced himself as both a real estate broker and the husband of an old friend of Mrs. Wortman's. He was sympathetic and said he wanted to help Mrs. Wortman with her difficulties. After being invited into the living room Mr. Berens told Mrs. Wortman he would save the house for her by purchasing it at auction, but that she must not allow anyone other than his bankers in the house so that he alone could arrange a loan prior to the sale and thus have the advantage at the sale. He also told Mrs. Wortman that he operated on a six percent basis. After looking through the house and suggesting a few minor repairs that would enhance the house's value in the eyes of his appraisers, Mr. Berens left, one half hour after his arrival. Mr. Berens called Mrs. Wortman after his appraisers had visited the house and advised her that a loan of $42,000 had been secured from Citizens. Mrs. Wortman did not see Mr. Berens again until February 20, 1964, the day of the foreclosure, when she introduced him to her old friend and advisor Maurice Fitzgan, a real estate broker. It was at this time, prior to the sale, that Mr. Berens said, according to Mrs. Wortman's testimony, that he would convey the house to Mrs. Wortman whenever she wanted it and at the latest when her son Patrick was 21 on November 26, 1966.

---

1. Although used by Mrs. Wortman and her family as their home, the title to the property was actually in two trustees holding for Mrs. Wortman's son.

Mr. Berens bid in the property, which had been appraised at $55,000 by Citizens, at the sale for $40,000 and, without the knowledge of Mrs. Wortman, took title in Mrs. Berens' name. Later Mr. Berens advised Mrs. Wortman that her monthly payments were to be $365, this amount being approximately what Mr. Berens was required to pay to carry the property plus twenty seven dollars payable towards a six percent commission on the total cost of the property to Mr. Berens. After the settlement on the property Mr. Berens called Mrs. Wortman and asked her to sign a lease for the property, telling her that it was merely something for his records. The lease, which was for one month with automatic month to month renewal, was dated the third day of April, 1964, and recited a rent of $365 per month. On April 22, 1964, Mrs. Wortman wrote a check payable to Mr. Berens for $730, and noted on the check "House payment for above April and May 1964." Thereafter she sent Mr. Berens monthly checks for $365 marking them as house payments or house payments plus commission. Mr. Berens crossed out some of these notations and at times wrote in the word "rent".

In May, 1964, Mr. Berens sent Mrs. Wortman a contract for the purchase of the property to be signed by Mrs. Wortman's mother along with a $500 note that would represent the down payment.[2] The contract provided for a purchase price of $44,500 with the purchaser to assume the mortgage to Citizens and to give a second deed of trust to secure the balance of the purchase price, payments under the second deed of trust to be $27 per month. Mrs. Wortman refused this offer stating that this was not the agreement and that she did not have $500.

Mrs. Wortman made improvements on the property at a cost to her exceeding $1,350. On September 30, 1966, Mrs. Wortman filed a bill of complaint alleging that on March 25, 1966, and again on June 25, 1966, demand was made on Mr. and Mrs. Berens to convey the property to her and alleging that she had informed the Berens that she stood willing and able to pay the costs and other items necessary to effectuate the transfer.

---

2. Title was to be taken in the name of Mrs. Wortman's mother since there were judgments outstanding against Mrs. Wortman.

The Chancellor found that Mr. Berens was an experienced realtor, that Mrs. Wortman was not knowledgeable in the field, that a definite confidential trust relationship existed between the parties from the outset and entered the decree providing that the Berens held the property as constructive trustees for Mrs. Wortman, subject to the mortgage to Citizens, and requiring Mrs. Wortman to execute a second deed of trust to secure the balance of the six percent commission due the Berens.

A contract for the sale of land cannot ordinarily be enforced unless it is in writing or all its terms and conditions are evidenced by some written memorandum signed by the party to be charged. *Lambdin v. Przyborowski,* 250 Md. 108, 242 A. 2d 150 (1968); *Forsyth v. Brillhart,* 216 Md. 437, 140 A. 2d 904 (1958). It is clear that if the Chancellor found that Mr. Berens agreed to convey the property to Mrs. Wortman at any time up to November 26, 1966, the promise to allow purchase at any time within a two-year 9-month period is not reflected in any writing that will satisfy the Statute of Frauds. Mr. Berens testified at the trial that he told Mrs. Wortman that if he bought the house he would "lease it or sell it to her." This testimony is not sufficient to satisfy the Statute since it does not refer to the promise to allow purchase at any time within a period greater than two years. See *Lambdin v. Przyborowski, supra,* holding that all the important terms must be contained in the memorandum. If no time is set in a contract to buy land the time is only a reasonable time. *Jaeger v. Shea,* 130 Md. 1, 99 A. 954 (1917); see *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 112 A. 2d 901 (1955).

The Chancellor's decree suggests that he found that the parties agreed that Mrs. Wortman would purchase the property immediately after settlement and that her monthly checks were payments in accordance with that agreement. The Chancellor did find that Mrs. Wortman signed the lease for the property after Mr. Berens described it as "merely for his record," and it appears the Chancellor also thought that the Berens would continue to hold record title with Mr. Berens remaining personally liable on the $42,000 mortgage to Citizens. There is, however, no memorandum containing these terms of sale, and since no argument has been made that the Statute of Frauds

could possibly be satisfied by considering Mr. Berens' testimony that he agreed to sell for his costs plus six percent together with his endorsement of monthly checks in the amount of $365, we will express no opinion on this point. *Harmon v. State Roads Commission,* 242 Md. 24, 217 A. 2d 513 (1966).

Further, there has been no argument in this Court that the Statute could be satisfied by part performance and no opinion will be expressed on this point. *Harmon v. State Roads Commission, supra.*

It is true that agreements to purchase land can be enforced in spite of the absence of a writing or memorandum sufficient to satisfy the Statute of Frauds where the circumstances require that equity impose a constructive trust, and these circumstances can exist when the parties stand in a confidential relationship. *O'Connor v. Estevez,* 182 Md. 541, 35 A. 2d 148 (1943) ; see *Dove v. White,* 211 Md. 228, 126 A. 2d 835 (1956). In our opinion, however, no confidential relationship can be found to exist in this case and the Chancellor was clearly erroneous in so finding. Mrs. Wortman was in financial straits and was emotionally upset, but her first meeting with Mr. Berens lasted only twenty minutes to one half hour, and thereafter she only conferred with him a few times by telephone and saw him briefly the day of the foreclosure sale. Mr. Berens did introduce himself as the husband of an old friend, but the testimony showed that Mrs. Wortman and Mrs. Berens had only been acquaintances some twenty years before and had only met once in a 7-11 store in the intervening years. Further, Mrs. Wortman testified that after she talked with Mr. Berens she called Mr. Fitzgan, a real estate broker and old family friend, and inquired about the general plan that Mr. Berens had described. Mr. Fitzgan approved the general plan and advised Mrs. Wortman that she should keep him apprised of the situation. This situation is not similar to cases involving dealings between family members, business associates or friends of long standing *where complete confidence has been placed in another.* See for example, *Dove v. White, supra; O'Connor v. Estevez, supra;* and *Dillfelder v. Winterling,* 150 Md. 626, 133 A. 825 (1926). A court of equity will, in a proper case, enforce "the kind of loose, not too clearly defined, arrangement which friends

often enter into * * *," *O'Connor v. Estevez,* 182 Md. at 555, because an insistence on compliance with the Statute of Frauds would result in unjust enrichment in cases where the close relationship between the parties makes these informal arrangements understandable. See *Dove v. White, supra; Dillfelder v. Winterling, supra.* The present case, however, is clearly not a case of this type.

In view of our opinion on the principal question in the case, it is not necessary for us to consider the appellants' contentions that the Chancellor erred in the exclusion of certain evidence.

> *Decree reversed, and case remanded for passage of an order vacating the decree and dismissing the bill of complaint, the appellee to pay the costs.*